## UNITED STATES DISTRICT COURT
## DISTRICT OF IDAHO

ALBERT E. BUZBY,

      Petitioner,

      vs.

MICHAEL J. ASTRUE, Commissioner of Social Security

      Respondent.

Case No.: 1:12-cv-00381-REB

**MEMORANDUM DECISION AND ORDER**

Now pending before the Court is Albert E. Buzby's Complaint/Petition for Review (Docket No. 1), seeking review of the Social Security Administration's final decision to deny his claim for supplement security income benefits.  The action is brought pursuant to 42 U.S.C. § 405(g).  Having carefully reviewed the record and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:

## I.  ADMINISTRATIVE PROCEEDINGS

On February 19, 2009, Albert E. Buzby ("Petitioner") filed an application for supplemental security income benefits, alleging a disability onset date of September 2, 2008. Petitioner's claim was initially denied on June 18, 2009 and, again, on reconsideration on September 1, 2009.  On September 29, 2009, Petitioner timely filed a Request for Hearing before an Administrative Law Judge ("ALJ").  On November 9, 2010, ALJ John T. Molleur held a hearing in Boise, Idaho, at which time Petitioner, represented by attorney David Banks, appeared and testified.  An impartial vocational expert, Anne F. Aastum, also appeared and testified.

**MEMORANDUM DECISION AND ORDER - 1**

On February 1, 2011, the ALJ issued a decision denying Petitioner's claims, finding that Petitioner was not disabled within the meaning of the Social Security Act.  Petitioner timely requested review from the Appeals Council on March 3, 2011.  On June 8, 2012, the Appeals Council denied Petitioner's request for review, making the ALJ's decision the final decision of the Commissioner of Social Security.

Having exhausted his administrative remedies, Petitioner timely files the instant action, arguing that (1) the ALJ's mental functional capacity determination is based on an improper disregard of the uncontradicted findings from examining and non-examining psychologists, and (2) the ALJ erred in rejecting the residual functional capacity assessment of treating family practitioner, Dr. Shappard.  *See* Pet.'s Brief, pp. 13-16 (Docket No. 14).  Petitioner therefore requests that the Court reverse the ALJ's decision or, alternatively, remand the case for further proceedings.  *See id.* at pp. 2 & 16.

## II.  STANDARD OF REVIEW

To be upheld, the Commissioner's decision must be supported by substantial evidence and based on proper legal standards.  42 U.S.C. § 405(g); *Matney ex. rel. Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *Gonzalez v. Sullivan*, 914 F.2d 1197, 1200 (9th Cir. 1990).  Findings as to any question of fact, if supported by substantial evidence, are conclusive.  42 U.S.C. § 405(g).  In other words, if there is substantial evidence to support the ALJ's factual decisions, they must be upheld, even when there is conflicting evidence.  *Hall v. Sec'y of Health, Educ. & Welfare*, 602 F.2d 1372, 1374 (9th Cir. 1979).

"Substantial evidence" is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971);

**MEMORANDUM DECISION AND ORDER - 2**

*Tylitzki v. Shalala*, 999 F.2d 1411, 1413 (9th Cir. 1993); *Flaten v. Sec'y of Health & Human Servs.*, 44 F.3d 1453, 1457 (9th Cir. 1995). The standard requires more than a scintilla but less than a preponderance (*see Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)), and "does not mean a large or considerable amount of evidence." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

With respect to questions of fact, the role of the Court is to review the record as a whole to determine whether it contains evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *See Richardson*, 402 U.S. at 401; *see also Matney*, 981 F.2d at 1019. The ALJ is responsible for determining credibility and resolving conflicts in medical testimony (*see Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984)), resolving ambiguities (*see Vincent ex. rel. Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984)), and drawing inferences logically flowing from the evidence (*see Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)). Where the evidence is susceptible to more than one rational interpretation in a disability proceeding, the reviewing court may not substitute its judgment or interpretation of the record for that of the ALJ. *Flaten*, 44 F.3d at 1457; *Key v. Heckler*, 754 F.2d 1545, 1549 (9th Cir. 1985).

With respect to questions of law, the ALJ's decision must be based on proper legal standards and will be reversed for legal error. *Matney*, 981 F.2d at 1019. The ALJ's construction of the Social Security Act is entitled to deference if it has a reasonable basis in law. *See id*. However, reviewing federal courts "will not rubber-stamp an administrative decision that is inconsistent with the statutory mandate or that frustrates the congressional purpose underlying the statute." *Smith v. Heckler*, 820 F.2d 1093, 1094 (9th Cir. 1987).

**MEMORANDUM DECISION AND ORDER - 3**

# III. DISCUSSION

**A.      Sequential Processes**

In evaluating the evidence presented at an administrative hearing, the ALJ must follow a sequential process in determining whether a person is disabled in general (*see* 20 C.F.R. §§ 404.1520, 416.920) - or continues to be disabled (*see* 20 C.F.R. §§ 404.1594, 416.994) - within the meaning of the Social Security Act.

The first step requires the ALJ to determine whether the claimant is engaged in substantial gainful activity ("SGA").  20 C.F.R. §§ 404.1520(a)(4)(I), 416.920(a)(4)(I).  SGA is defined as work activity that is both substantial and gainful.  "Substantial work activity" is work activity that involves doing significant physical or mental activities.  20 C.F.R. §§ 404.1572(a), 416.972(a).  "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized.  20 C.F.R. §§ 404.1572(b), 416.972(b).  If the claimant has engaged in SGA, disability benefits are denied, regardless of how severe his physical/mental impairments are and regardless of his age, education, and work experience.  20 C.F.R. §§ 404.1520(b), 416.920(b).  If the claimant is not engaged in SGA, the analysis proceeds to the second step.  Here, the ALJ found that Petitioner has not engaged in substantial gainful activity since February 19, 2009, Petitioner's application date (AR 15).

The second step requires the ALJ to determine whether the claimant has a medically determinable impairment, or combination of impairments, that is severe and meets the duration requirement.  20 C.F.R. § 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  An impairment or combination of impairments is "severe" within the meaning of the Social Security Act if it significantly limits

**MEMORANDUM DECISION AND ORDER - 4**

an individual's ability to perform basic work activities.  20 C.F.R. §§ 404.1520(c), 416.920(c).

An impairment or combination of impairments is "not severe" when medical and other evidence

establish only a slight abnormality or a combination of slight abnormalities that would have no

more than a minimal effect on an individual's ability to work.  20 C.F.R. §§ 404.1521, 416.921.

If the claimant does not have a severe medically determinable impairment or combination of

impairments, disability benefits are denied.  20 C.F.R. §§ 404.1520(c), 416.920(c).  Here, the

ALJ found that Petitioner had the following severe impairments: (1) status post bacterial

endocarditis with mitral valve replacement, (2) degenerative disc disease, (3) cognitive

impairment, (4) history of substance abuse, and (5) obesity.  (AR 15).

     The third step requires the ALJ to determine the medical severity of any impairments;

that is, whether the claimant's impairments meet or equal a listed impairment under 20 C.F.R.

Part 404, Subpart P, Appendix 1.  20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  If the

answer is yes, the claimant is considered disabled under the Social Security Act and benefits are

awarded.  20 C.F.R. §§ 404.1520(d), 416.920(d).  If the claimant's impairments neither meet nor

equal one of the listed impairments, the claimant's case cannot be resolved at step three and the

evaluation proceeds to step four.  *Id*.  Here, the ALJ concluded that Petitioner's above-listed

impairments, while severe, do not meet or medically equal, either singly or in combination, the

criteria established for any of the qualifying impairments.  (AR 15).

     The fourth step of the evaluation process requires the ALJ to determine whether the

claimant's residual functional capacity is sufficient for the claimant to perform past relevant

work.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  An individual's residual functional

capacity is his ability to do physical and mental work activities on a sustained basis despite

**MEMORANDUM DECISION AND ORDER - 5**

limitations from his impairments.  20 C.F.R. §§ 404.1545, 416.945.  Likewise, an individual's

past relevant work is work performed within the last 15 years or 15 years prior to the date that

disability must be established; also, the work must have lasted long enough for the claimant to

learn to do the job and be engaged in substantial gainful activity.  20 C.F.R. §§ 404.1560(b),

404.1565, 416.960(b), 416.965.  Here, the ALJ determined that Petitioner has the residual

functional capacity to perform sedentary work as defined in 20 C.F.R. § 416.967(a), except he

should avoid workplace hazards and he is limited to simple 1-2 step instructions.  (AR 17-21).

Due to these limitations, the ALJ further concluded that Petitioner is unable to perform any past

relevant work.  (AR 21).

In the fifth and final step, if it has been established that a claimant can no longer perform

past relevant work because of his impairments, the burden shifts to the Commissioner to show

that the claimant retains the ability to do alternate work and to demonstrate that such alternate

work exists in significant numbers in the national economy.  20 C.F.R. §§ 404.1520(a)(4)(v),

416.920(a)(4)(v), 404.1520(f), 416.920(f); *see also Matthews v. Shalala*, 10 F.3d 678, 681 (9th

Cir. 1993).  If the claimant is able to do other work, he is not disabled; if the claimant is not able

to do other work and meets the duration requirement, he is disabled.  Here, the ALJ found that

Petitioner is capable of performing sedentary work found in significant numbers within the

relevant national/regional economy, including addressor, escort vehicle driver, document

preparer, and final assembler.  (AR 22).  Therefore, based on Petitioner's age, education, work

experience, and residual functional capacity, the ALJ concluded that Petitioner was not under a

disability as defined in the Social Security Act since February 29, 2009, the date his application

was filed.  (AR 22-23).


**MEMORANDUM DECISION AND ORDER - 6**

**B.     Analysis**

    1.      <u>The ALJ's Mental Functional Capacity Determination</u>

Only two mental health specialists examined Petitioner and rendered opinions regarding

the functional impacts of Petitioner's cognitive disorder: Dr. David Starr (AR 458-462) and Dr.

Michael Dennis (AR 463-465).  Dr. Starr's June 15, 2009 report indicated that Petitioner

"demonstrated some difficulty with concentration, attention, visual scanning, and executive

functioning."  (AR 461).  Three days later, after reviewing the medical evidence in the record,

Dr. Dennis conducted a "Mental Residual Functional Capacity Assessment," summarily

concluding, *inter alia*, that Petitioner had "moderate" limitations in his (1) ability to understand

and remember detailed instructions; (2) ability to carry out detailed instructions; (3) ability to

maintain attention and concentration for extended periods; and (4) ability to complete a normal

workday and workweek without interruptions from psychologically based symptoms and to

perform at a consistent pace without an unreasonable number and length of rest periods.  (AR

463-464).[1]  Through this appeal, Petitioner argues that the ALJ ignored Dr. Dennis's latter two

findings – namely, that Petitioner is "moderately limited in his ability to maintain attention and

concentration for extended periods, to complete a normal workday and workweek, and perform

at a consistent pace."  *See* Pet.'s Brief, p. 14 (Docket No. 14).[2]  The undersigned disagrees.

──────────────

        [1]  As to each of the other 16 mental activities assessed, Dr. Dennis summarily concluded
that Petitioner was "not significantly limited."  (AR 463-464).

        [2]  Petitioner also argues that the ALJ disregarded Dr. Starr's related findings.  *See* Pet.'s
Brief, p. 14 (Docket No. 14) ("The ALJ offered no rationale for having, in essence, ignored the
aspects of the opinions of Drs. Starr and Dennis that pertain to Mr. Buzby's ability to sustain
attention, concentration, attendance, and pace.  Both doctors who assessed Mr. Buzby's mental
function agreed that he is limited in those areas, yet the ALJ's functional capacity assessment
contains no acknowledgment of those critical limitations.").

**MEMORANDUM DECISION AND ORDER - 7**

The consideration of Petitioner's above-referenced "moderate" limitations takes place specifically at step three of the sequential evaluation process to determine the medical severity of Petitioner's impairments – whether they meet or equal a listed impairment.  *See supra*. Analyzing the "paragraph B" criteria of Listings 12.02 (organic mental disorders) and, relatedly, 12.09 (substance addiction disorders), a claimant's mental impairment must result in at least two of the following: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; or (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation, each of extended duration.  In turn, at step three of the sequential evaluation process (and consistent with Dr. Dennis' findings), the ALJ found in no uncertain terms that, "[w]ith regard to concentration, persistence, or pace, [Petitioner] has *moderate* difficulties."  (AR 16) (emphasis added).[3]  The ALJ went on to explain that such noted limitations "are not a residual functional capacity assessment, but are used to rate the severity of mental impairments at steps two and three of the sequential evaluation process." (AR 17).  In other words, it cannot be said (as Petitioner's counsel does here) that the ALJ ignored the medical opinions speaking to Petitioner's above-mentioned moderate limitations.  To the contrary, the ALJ expressly referenced them in finding that Petitioner's impairments do not meet or medically equal a qualified impairment.  (AR 15-17).

Further, at step four of the sequential evaluation process, the ALJ then took into account these limitations in arriving upon Petitioner's residual functional capacity.  (AR 17) ("Therefore, the following residual functional capacity assessment reflects the degree of limitation the

---

[3]  Relative to the "paragraph B" criteria, the ALJ also found that Petitioner has mild restrictions in activities of daily living; mild difficulties in social functioning; and no episodes of decomensation for extended durations.  (AR 16-17).

**MEMORANDUM DECISION AND ORDER - 8**

undersigned has found in the "paragraph B" mental function analysis.").  In turn, the ALJ recited

and analyzed the opinions and treatment notes of Petitioner's medical providers, including Dr.

Starr who, as to Petitioner's functional capacity assessment, flatly concluded: "*Claimant would*

*do best with simple, repetitive work activity.  He would likely have difficulty  understanding,*

*remembering and carrying out detailed instructions*."  (AR 20) (citing (AR 465)) (emphasis

added).[4]  Far from disregarding Dr. Dennis's opinions, the ALJ gave them "significant weight"

because Dr. Dennis was able to examine the entire medical evidence of record and he is familiar

with Social Security Regulations.  (AR 20).  Seemingly taking Dr. Dennis's opinions squarely

into account, the ALJ thus concluded that, due to his cognitive impairment, Petitioner is capable

of only sedentary work involving simple, 1-2 step instructions.  (AR 17-21).  *See, e.g.*, *Stubbs-*

*Danielson v. Astrue*, 539 F.3d 1169, 1173-74 (9th Cir. 2008) (upholding ALJ's residual

functional capacity finding that petitioner was able to perform simple, routine, repetitive

sedentary work despite petitioner's moderate mental limitations in particular areas).

Accordingly, the undersigned finds that, in assessing Petitioner's residual functional

capacity, the ALJ adequately took into consideration the opinions of Drs. Starr and Dennis

---

[4]  According to the "Mental Residual Functional Capacity Assessment" form, this conclusion represents an "elaboration" on Dr. Dennis's previously-referenced summary conclusions speaking to Petitioner's moderate limitations.  (AR 465) ("Record the elaborations on the preceding capacities in this section. . . . .  Explain your summary conclusions in narrative form.  Include any information which clarifies limitation or function.").  *See also* Resp.'s Brief, p. 8 (Docket No. 16) (quoting Program Operations Manual Systems (POMS) to differentiate between form's "summary conclusions" (Section I) and form's "functional capacity assessment" (Section III): "'Section I is merely a worksheet to aid in deciding the presence and degree of functional limitations and the adequacy of documentation and does not constitute the Residual Functional Capacity assessment'" "'Section III . . . is for recording the mental residual functional capacity determination.  It is in this section that the actual mental residual functional capacity assessment is recorded, explaining the conclusions indicated in section I, in terms to which these mental capacities or functions could or could not be performed in work settings.'") (quoting POMS DI 24510.060(B)(2) & (3)).

**MEMORANDUM DECISION AND ORDER - 9**

dealing with Petitioner's limitations concerning attention, concentration, attendance, and pace. Petitioner's argument to the contrary is overstated when examining the actual record itself.

       2.    <u>Dr. Shappard's Opinions</u>

Opinions of treating physicians, like Dr. Shappard, are entitled to greater weight than the opinion of a non-examining physician. *See Pitzer v. Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990); *Gallant v. Heckler*, 753 F.2d 1450 (9th Cir. 1984). The treating physician's opinion is given that deference because "he is employed to cure and has a greater opportunity to know and observe the individual." *Rodriguez v. Bowen*, 876 F.2d 759, 761 (9th Cir. 1989). However, a treating physician's opinion is not necessarily conclusive. *See id.* at 762. The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of an examining physician. *See Pitzer*, 908 F.2d at 506. Even if the opinion of an examining doctor is contradicted by another doctor, it can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. *See Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995). A lack of objective medical findings, treatment notes, and rationale to support a treating physician's opinions is a sufficient reason for rejecting that opinion. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001).

Dr. Shappard began seeing and treating Petitioner since 2006. (AR 680). Part and parcel with Petitioner's application for supplemental security income benefits, Dr. Shappard authored two, nearly identical letters – one on April 28, 2009, the other on June 7, 2010 – relating to Petitioner's physical limitations. *Compare* (AR 441) ("His chronic low back pain limits his lifting and standing for any period fo time.") *with* (AR 688) ("In addition, his chronic low back

**MEMORANDUM DECISION AND ORDER - 10**

pain limits his ability to stand, lift, push, or pull for any period of time.").[5]  Through this appeal, Petitioner argues that the ALJ improperly granted little or no weight to Dr. Shappard's physical functional capacity assessments.  *See* Pet.'s Brief, p 14 (Docket No. 14).  The undersigned disagrees.

First, these letters (the second of which came *after* Dr. Shappard's completion of the May 10, 2010 "Multiple Impairment Questionnaire" (*see supra*)) did not correlate Petitioner's *physical* limitations with his ability to perform work; rather, Dr. Shappard concluded only that Petitioner was unable to work due to his understood *mental* limitations:

> Based on his cognitive impairments, which have been evaluated by a licensed psychologist, I do not feel that he can sustain gainful employment.  His reasoning ability and memory issues make it nearly impossible to work on a daily basis.

(AR 688); *see also* (AR 441) (same).[6]  This comports with the fact that Petitioner's physical limitations (largely, if not exclusively associated with degenerative disc disease/lower back pain) pre-dated his February 19, 2009 application date and alleged September 2, 2008 onset date.  (AR 452-457); *see also* (AR 686) (Dr. Shappard acknowledging that Petitioner's "cognitive impairment" began in "late 2008" whereas his "low back pain" has been ongoing for "15-20 years").  Here, there is no question that Petitioner experiences significant back pain that has more than a minimal effect on his ability to do basic work activities – to be sure, the ALJ found that Petitioner's degenerative disc disease represents a severe impairment.  *See supra*.  However,

---

[5]  On May 10, 2010, Dr. Shappard also completed a "Multiple Impairment Questionnaire," discussing Petitioner's mental and physical condition and corresponding ability to perform work.  (AR 680-687).

[6]  Although commenting, in part, upon Petitioner's physical limitations, the thrust of the "Multiple Impairment Questionnaire" likewise associated Petitioner's perceived inability to work on his mental limitations.  (AR 680-687).

**MEMORANDUM DECISION AND ORDER - 11**

there is no evidence in the record (beyond reports speaking simply to Petitioner's condition and

related treatment)[7] suggesting that Petitioner is unable to perform sedentary work owing to his

physical limitations.[8]

Second, Dr. Shappard's treatment notes over time do not align with the very restrictive

limitations given in his opinions.  For example, while repeatedly discussing Petitioner's medical

condition over the years, his treatment notes never actually speak to Petitioner's capacity to

perform (or not perform, as the case may be) certain physical tasks.  To the contrary, although

Dr. Shappard opines in the "Multiple Impairment Questionnaire" that "sitting" and "maintaining

any one position for a prolonged period of time" would bring about Petitioner's pain, Shappard's

treatment record includes notes that Petitioner was medically stable to (1) go on "a long road trip

to New Jersey" for a funeral around August 10, 2009 (AR 668); (2) "travel[ ] to California . . .

for a period of two weeks to see his grandmother who is about to pass away" around December

7, 2009 (AR 664-665); and (3) "head[ ] to California . . . as his uncle is having a coronary artery

---

[7] In this respect, Petitioner argues that his "spinal impairments are supported by cervical spine x-ray findings of anterolisthesis at multiple levels as well as facet degeneration . . . and lumbar spine x-rays showing arthritic facet changes in the lower lumbar region."  *See* Pet.'s Brief, p. 15 (Docket No. 14).  Except the ALJ does not dispute such diagnoses.  *See supra*. Instead, the ALJ disputes whether these admitted physical impairments prevent Petitioner from performing sedentary work.  (AR 21) (ALJ concluding that Petitioner's "history of endocarditis, degenerative disc disease, and obesity, support a finding of sedentary work restriction.").  In short, Petitioner's repeated references to the existence of certain physical impairments does not, standing alone, translate to an inability to perform sedentary work.

[8] Consistent with the ALJ's acknowledgment of Petitioner's severe physical impairments (*see supra*), it should also be said that the ALJ did not completely disregard Dr. Shappard's opinions on this point.  For example, the ALJ similarly gave Dr. Ward E. Dickey's *contradictory* medical opinions "little weight" when recognizing that Dr. Dickey did not take into account (1) Petitioner's "credible allegations of lifting, standing, and walking limitations," or (2) "evidence received at the hearing level showing that [Petitioner] is more limited."  (AR 20).  Thus, in the undersigned's mind, the ALJ appropriately contrasted Drs. Shappard and Dickey's opinions with the balance of the medical evidence in the record in reaching his decision.

**MEMORANDUM DECISION AND ORDER - 12**

bypass graft" around March 18, 2010 (AR 658-659).  Such situations combine to warrant the

calling into question Dr. Shappard's opinion that Petitioner's physical limitations prevent him

from performing sedentary work.[9]

Again, there is no question that Petitioner suffers from several severe impairments

(acknowledged by the ALJ (*see supra*)) that no doubt impact his ability to work; however, it is

incorrect to state, as Petitioner's counsel does, that the ALJ improperly discounted Dr.

Shappard's medical opinions.  *See* Pet.'s Brief, p. 16 (Docket No. 14).  While Dr. Shappard's

assessments may not have been given the weight Petitioner would have preferred, they were not

given independent of the surrounding medical record or the applicable standards of law.  At this

stage of the proceedings it is not this Court's duty to resolve the conflicting opinions and

ultimately decide whether Petitioner is once-and-for-all disabled as that term is used within the

Social Security regulations.  Rather, this Court must decide whether the ALJ's decision in

determining that Petitioner is not disabled is supported by the record.  Given the conflicting

medical opinions and inconsistent treatment notes, the ALJ need only offer specific and

legitimate reasons, supported by substantial evidence in the record, for rejecting Dr. Mueller's

medical opinion.  *See supra*.  Because the evidence can reasonably support the ALJ's conclusion

---

[9]  The ALJ and Respondent further question Dr. Shappard's credibility in opining upon Petitioner's functional limitations because of possible disciplinary proceedings with the Idaho Board of Medicine.  (AR 21); *see also* Resp.'s Brief, p. 10 (Docket No. 16).  No legal authority is offered for such a proposition and, therefore, this decision does not address the point. Moreover, Respondent's argument that Dr. Shappard's opinions are further compromised given his role as an "advocate for Petitioner" is without merit.  *See* Resp.'s Brief, pp. 10-11 (Docket No. 16).  In *Matney* (the case cited by Respondent), the medical provider in question examined the petitioner only once before producing a report commenting on the petitioner's functional capacity.  *Matney*, 981 F.2d at 1020.  As a result, the ALJ properly concluded that the medical provider's conclusions "were entitled to less weight because he had agreed to become an advocate and assist in presenting a meaningful petition for Social Security benefits."  *Id.*  Here, Dr. Shappard examined and treated Petitioner on numerous occasions.  *Matney* is therefore inapplicable on this discrete point.

**MEMORANDUM DECISION AND ORDER - 13**

in this respect, this Court will not substitute its judgment for that of the ALJ's.  *See Richardson*, 402 U.S. at 401; *see also Matney*, 981 F.2d at 1019.

## IV.  CONCLUSION

The ALJ is the fact-finder and is solely responsible for weighing and drawing inferences from facts and determining credibility.  *Allen*, 749 F.2d at 579; *Vincent ex. rel. Vincent*, 739 F.2d at 1394; *Sample*, 694 F.2d at 642.  If the evidence is susceptible to more than one rational interpretation, one of which is the ALJ's, the Court may not substitute its own interpretation for that of the ALJ.  *Key*, 754 F.2d at 1549.

The evidence upon which the ALJ relied can reasonably and rationally support his well-formed conclusions, despite the fact that such evidence may be susceptible to a different interpretation.  Accordingly, the ALJ's decisions concerning the opinions of Dr. Starr and Dr. Dennis (relative to Petitioner's mental functional capacity determination), along with Dr. Shappard's opinions (relative to Petitioner's physical functional capacity determination) are based on proper legal standards and supported by substantial evidence.  Therefore, the Commissioner's determination that Petitioner is not disabled within the meaning of the Social Security Act is supported by substantial evidence in the record and is based upon an application of proper legal standards.

## V.  ORDER

Based on the foregoing, the decision of the Commissioner is AFFIRMED and this action is DISMISSED in its entirety with prejudice.

DATED:  **September 9, 2013**

_____
Honorable Ronald E. Bush
U. S. Magistrate Judge

**MEMORANDUM DECISION AND ORDER - 14**